IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUAN PEREZ, et al., | CIVIL ACTION NO. **4:CV-05-2337** |
| Plaintiffs | Magistrate Judge Blewitt |
| v. | |
| TOWNSEND ENGINEERING COMPANY, | |
| Defendant | |

**MEMORANDUM AND ORDER**

**I. Background.**

This products liability and personal injury action was commenced on October 7, 2005, by Plaintiffs Juan Perez and Minerva Perez ("Plaintiffs") against Defendant Townsend Engineering Company ("Defendant") in the Court of Common Pleas of Lackawanna County, Pennsylvania. (Doc. 1, Ex. A; Doc. 20-3). On November 10, 2005, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1441. (Doc. 1). The Defendant invoked the diversity jurisdiction of this Court. 28 U.S.C. § 1332(a). (Doc. 1 ¶ 7). The parties consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1), and the District Court entered an Order reassigning this case to a Magistrate Judge (Doc. 7) for pre-trial and trial purposes.

Defendant filed an Answer to the Plaintiffs' Complaint on January 9, 2006. (Doc. 9). On May 29, 2007, Defendant filed the instant Motion to Preclude Testimony of Plaintiffs' Expert Witness (Lambert), exhibits and a supporting Brief. (Doc. 21). On June 28, 2007, Plaintiffs filed a Response to, a Brief and exhibits in opposition to Defendant's Motion to Preclude Testimony of Plaintiffs' Expert Witness. (Docs. 26, 27). The Court permitted the parties to file reply briefs and sur-reply briefs. (Docs. 34, 38). On September 28, 2007, the Court heard oral argument regarding Defendant's Motion to Preclude, as well as its Summary Judgment Motion.

In its Motion to Preclude the Testimony of Plaintiffs' Expert Witness, Defendant argues that certain opinions of Plaintiffs' expert must be precluded because they fail to meet the Federal Rule of Evidence 702 and *Daubert*[1] standards. (Doc. 21).

On May 29, 2007, Defendant also filed a Motion for Summary Judgment and supporting documents. (Docs. 20, 33). Plaintiffs filed their opposition on June 28, 2007. (Docs. 28, 29, 30, 39). By separate Memorandum and Order, we will decide Defendant's Motion for Summary Judgment. be denied.[2]

## II. DISCUSSION.

Ralph A. Lambert, Jr., P.E., is Plaintiffs' proffered expert witness. Defendant argues that Mr. Lambert should not be permitted to offer the following opinions:

(a) that the Townsend 7600 Skinner is "defective";

(b) that Townsend's conduct with regard to the 7600 Skinner was "unreasonable" and was "without due care";

(c) that a "defect" in the Townsend 7600 Skinner caused Plaintiff Juan Perez' injury;

(d) that the use of a "touch stop" device (which is Plaintiffs' only alternative design) similar or comparable to the Grasselli CLO System would have prevented this accident;

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993).

[2] In its Motion for Summary Judgment, Defendant argues that Plaintiffs failed to raise a genuine issue of material fact regarding the product's design defect, warnings and causation; Plaintiffs failed to present qualified expert witness testimony; Plaintiffs failed to present evidence that the product is "unreasonably dangerous"; and Plaintiffs failed to present evidence that if Mr. Perez followed the multiple warnings accompanying Defendant's product, the injury still would have occurred. (Doc. 20).
If the Court denies Defendant's instant Motion to Preclude the Testimony of Plaintiffs' Expert, then the Court will rely upon the report of Plaintiffs' expert when deciding Defendant's Summary Judgment Motion.

2

(e) that Townsend should have chosen a different glove that provided "less" (sic) protection to operators;

(f) that different warnings on the machine would have prevented this accident; and

(g) that different warnings and instructions in the operator's manual would have prevented this accident.

(Doc. 21 ¶ 12).

Plaintiffs argue that Mr. Lambert is qualified under F.R.E. 702 to render an opinion that Defendant's skinning machine is defective. (Doc. 27 at 1, 21-23). Plaintiffs also argue that Mr. Lambert used an accepted methodology in rendering his opinions because his methodology has been outlined in engineering publications, has been admitted as valid in court, is the same methodology that Defendant used in designing its product, and was independently validated by a respected government body and an independent industry group. (Doc. 27 at 1, 23-41).

Mr. Lambert is a Professional Engineer with engineering experience beginning in 1963. (Doc. 27, Ex. A, *Affidavit of Ralph A. Lambert, Jr.*; Doc. 27, Ex. B, Curriculum Vitae). Mr. Lambert has a Bachelor of Science Degree in Industrial Engineering. He is a Registered Professional Engineer and has worked for many food processing companies. Mr. Lambert has worked for Ocean Spray Cranberries, Inc., Oscar Mayer and Company, Hanover Food Corporation and Furman Foods, among others. (Doc. 27, Ex. A, *Affidavit of Ralph A. Lambert, Jr.*; Doc. 27, Ex. B, Curriculum Vitae).

Mr. Lambert has reviewed all of the pleadings, discovery materials and pertinent documents in this case. (Doc. 27 at 22). Specifically, Mr. Lambert reviewed Defendant's documents in response to Plaintiffs' First, Second and Third Requests for Production of Documents; Defendant's Answers to Plaintiffs' interrogatories; Plaintiff Juan Perez' testimony; testimony of Mr. Perez' co-workers; testimony of Defendant's corporate designee, Stephen H. Cate; documents and correspondence from the British Health &

Safety Executive[3]; European standards on derinding, skinning and membrane removal machines; Defendant's Product Manual and Defendant's Patent and other design documents. (Doc. 27 at 22). Mr. Lambert also conducted two site inspections and inspected photographs from the site inspections. (Doc. 27 at 22). Based on this material, as well as his extensive engineering experience in the food processing industry, Mr. Lambert opined as to Mr. Perez' injury. (Doc. 27 at 22-23).

Plaintiffs also argue that Mr. Lambert is qualified to set forth an opinion regarding Defendant's Skinning machine. (Doc. 27 at 24). Plaintiffs state that "there is absolutely nothing about the Defendant's skinning machine that makes it so unique as not be to susceptible to general engineering principles." (Doc. 27 at 24). As stated, Mr. Lambert is a Professional Engineer with significant engineering experience in the food processing industry. Plaintiffs state that, although Mr. Lambert has limited experience with the exact skinning machine at issue in this case, he has extensive experience with other, similar machines. (Doc. 27 at 24-25).

Plaintiffs state that "there is nothing novel" about Mr. Lambert's methodology and the criteria he considered in rendering his opinions. (Doc. 27 at 25). Mr. Lambert references several objective sources in rendering his opinion. He referenced *Marks' Standard Handbook for Mechanical Engineers*, the *Accident Prevention Manual for Industrial Operation*, the *Accident Prevention Manual Engineering and Technology*, *Product Safety Engineering for Managers* and *Safety Analysis and Design for Safety*. (*Preliminary Engineer's Report*, Doc. 27, Ex. B, pp. 5-6).

Mr. Lambert's methodology identifies the potential hazards of the skinning machine, considers whether it was possible to design the hazard out of the machine, and considers whether it was possible to guard the danger zone of the machine. Plaintiffs assert that Defendant accepts the engineering principles upon which Mr. Lambert based his opinion.

---

[3]The British Health and Safety Executive ("HSE") is the British equivalent of the U.S. Occupational Safety & Health Administration ("OSHA"). *See Health and Safety Executive* at http://www.hse.gov.uk/

4

(Doc. 27 at 30-33). Plaintiffs note that Mr. Cate testified that the British HSE believes that the Grasselli "touch stop" system is the only skinning machine that provides proper operator protection. *(Deposition of Stephen Cate, Doc. 27, Ex. D, pp. 147-48)*.

As the Third Circuit stated in *Walker v. Gordon*, 2002 WL 31059157 \*\*2 (3d Cir.), "[t]he District Court has broad discretion in determining the admissibility of evidence, and 'considerable leeway' in determining the reliability of particular expert testimony under *Daubert*. *See Kumho Tire [v. Carmichael]*, 526 U.S. [137] at 152-53 [(1999)]." The *Walker* Court also stated that "*Daubert* requires that, when faced with a proffer of expert testimony, a trial judge determines 'whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.' *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786. These gatekeeping requirements have been extended to apply to all expert testimony. *See Kumho Tire*, 526 U.S. at 147." *Id.*

Further, the *Walker* Court stated:

> In accordance with *Daubert*, trial courts are required to apply a reliability analysis to an expert's opinion; that opinion is "reliable" if it is based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (1994) (quoting *Daubert*, 509 U.S. at 590). In other words, the expert must have "good grounds" for his belief. *Id.* at 741-42 (explaining how Rule 702, which governs the use of expert testimony in the federal courts, embodies three distinct substantive restraints on the admission of expert testimony: qualifications, reliability and fit).

*Id.* at \*\*3.

The Court in *Walker* provided guidance on the role of the trial court with respect to its gatekeeping requirements. The *Walker* Court explained:

> In performing its gatekeeping function and, in particular, in deciding whether an expert's report meets the reliability factor of a *Daubert* and Rule 702 analysis, the District Court is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein. To the contrary, the role of the District Court is simply to evaluate whether the *methodology* utilized by the expert is reliable, i.e., whether, when correctly employed, that methodology leads to testimony helpful to the trier of fact. *See Daubert*, 509 U.S. at 591-93 (noting that the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue" and that the trial court's determination "entails a preliminary assessment of whether the reasoning or

5

> methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue"). [FN7] Determinations regarding the weight to be accorded, and the sufficiency of, the evidence relied upon by the proffered expert, are within the sole province of the jury. *Cf. Breidor v. Sears, Roebuck and Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.").

*Id.*

Further, as the Court in *Walker* stated, "[a]n expert is ... permitted to base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the jury. It is also ... a proper subject for cross-examination. *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F. 3d 408, 414 (3d Cir. 2002) ("Rule 705, together with Rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination."). *Walker*, 2002 WL 31059157 at **3.

In the present case, Mr. Lambert reviewed several materials and documents which we find provide a sufficient reliable source of information to support his conclusions regarding the Defendant's product. (*See* Doc. 27, Ex. B, Preliminary Engineer's Report, pp. 1-2). We also find that Mr. Lambert has adequately explained his opinions in his report as well as the bases for those opinions. *Id.* at 5-9.

The Court stated in *Martin v. Yellow Trans., Inc.*, 2006 WL 494880, *2 (E.D. Pa. 2006):

> Expert testimony that meets the qualification and reliability requirements is admissible "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" Fed.R.Evid. 702. In other words, a witness' testimony meets the "fit" prerequisite if his opinions present relevant evidence that helps the factfinder. *See Oddi*, 234 F.3d at 145 (*citing Daubert*, 509 U.S. at 591-92; *Paoli II*, 35 F.3d at 743).

The Defendant objects to the admission of Mr. Lambert's report and testimony claiming that his opinion is not based on a sufficiently reliable basis, it is based on speculation, conjecture and surmise, and it does not "fit" the facts of this case. (Doc. 21-2 at 3-4). Defendant states that Mr. Lambert opined that whether the "touch stop" device

6

should be mandatory, or offered as an option, is "subject to debate", and thus there is no reliable basis for the opinion. Defendant states that Mr. Lambert's opinion that Mr. Perez would have worn a Grasselli-type glove, even though he did not wear the Townsend-recommended glove, is based on speculation, conjecture and surmise. (Doc. 21-2 at 3). Defendant notes that Mr. Lambert opined that Townsend failed to perform a Hazard/Risk analysis of the Model 7600 Skinner and the lack of due care in design was unreasonable and was a direct cause of Mr. Perez' injury. Defendant states that this opinion does not "fit" the facts of this case because Mr. Cate testified that a Hazard/Risk analysis was done on the Model 7600 Skinner. (Doc. 21-2 at 3-4; *Deposition of Stephen H. Cate*, Doc. 21-7, Ex. E, pp. 42-49).

Plaintiffs note that Defendant's patent acknowledges that the blade and tooth roll of the skinning machine are dangerous and there was a cover to guard the hazard. (*Deposition of Stephen H. Cate*, Doc. 29, Ex. D, pp. 19-20).

However, Defendant states that Citterio employees testified that there were occurrences where the Grasselli machine continued to run despite the glove touching the machine. (Doc. 21-2 at 3; *Deposition of Bryan O'Donnell*, Doc. 21-6, Ex. D, pp. 81-82). Bryan O'Donnell, a Citterio employee, testified that, in his experience with the Grasselli machine, it is "much safer," even though the computer in the machine may act up and cause the machine to continue to run even if you touch it. (*Deposition of Bryan O'Donnell*, Doc. 21-6, Ex. D, pp. 81-82).

A review of Mr. Lambert's report reveals that he relied in part upon disputed evidence. Mr. Lambert has fully set forth the factual information upon which he bases his opinions. We find that Mr. Lambert's report is reliable. As the Court in *Walker* stated, "[a]n expert is ... permitted to base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the jury. It is also ... a proper subject for cross-examination." *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F. 3d 408, 414 (3d Cir. 2002) ("Rule 705, together with Rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during

7

cross-examination."). 2002 WL 31059157 at **3.

Federal Rule of Evidence 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

F.R.E. 702.

We agree with Plaintiffs that Mr. Lambert's testimony is relevant and that he is qualified to testify in this case. (Doc. 27). The qualifications of Ralph A. Lambert, Jr., P.E., were examined in *Padillas v. Stork-Gamco, Inc.*, 2000 WL 1470210 (E.D. Pa.), however as Defendant states, the cases are fact specific. (Doc. 34 ¶ 13). In *Padillas*, the plaintiff was injured when cleaning chicken processing equipment. The hose the *Padillas* plaintiff was using got stuck in the overhead conveyor and caused his hand to hit the blades of the cutter. The *Padillas* plaintiff used Ralph Lambert, the proffered expert in the present case, as his expert witness. The court found that Mr. Lambert's opinions were admissible in part. When determining whether Mr. Lambert was qualified to testify as an expert, the court stated:

> Plaintiff's expert Ralph Lambert testified to his industrial engineering education, his licensure as a mechanical engineer, his more than three decades of experience as a plant manager and engineer in the food processing business, and his experience in forensic engineering. He testified that he has supervised plant utilities in meat processing plants, and in particular has worked as a consultant for poultry processing companies. As a plant manager and engineer, he has worked with machines that make use of rotating blades and require guarding of such blades, as well as conveyor systems.
>
> Based on the foregoing, I conclude that Lambert is generally qualified to give his opinion regarding the safety of food processing machine design and layout, and whether or not the food processing machine in this case required guarding, and therefore Lambert meets the first requirement for the admissibility of his opinions in this case.

*Padillas*, 2000 WL 1470210 at *2 (citations omitted).

Although fact specific, the *Padillas* Court found that Mr. Lambert was an expert in mechanical engineering and he was generally qualified to give his opinions regarding the safety of food processing machine design and layout. Similarly, based on the facts of our

case, we find that Mr. Lambert is qualified to testify in this case, even though he did not work for a skinning machine company. *See Tormenia v. First Investors Realty Co.*, 251 F.3d 128, 134 (3d Cir. 2000) ("Rule 702 does not require that experts have personal experience with the object of the litigation in which they testify, nor does it require that experts eschew reliance on a plaintiff's account of factual events that the experts themselves did not observe.").

In *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002), the Third Circuit stated that "[a] party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination." Thus, Mr. Lambert will be permitted to testify at trial, and his report and his opinions will be admitted, and the appropriate avenue for Defendant is to cross-examine Mr. Lambert.

Accordingly, we will deny Defendant's Motion to Preclude Testimony of Plaintiffs' Expert Witness.

An appropriate Order follows.

                                                              **THOMAS M. BLEWITT**
                                                            **United States Magistrate Judge**

Dated: March 5, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUAN PEREZ, et al., | : CIVIL ACTION NO. **4:CV-05-2337** |
| Plaintiffs | : Magistrate Judge Blewitt |
| v. | : |
| TOWNSEND ENGINEERING COMPANY, | : |
| Defendant | : |

## ORDER

**AND NOW, this 5 day of March, 2008**, upon consideration of the Defendant's Motion to Preclude Testimony of Plaintiffs' Expert Witness **(Doc. 21)**, and after hearing oral argument on September 28, 2007, **IT IS HEREBY ORDERED THAT** Defendant's Motion is **DENIED.**

**THOMAS M. BLEWITT**
**United States Magistrate Judge**

Dated: March 5, 2008