IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUAN PEREZ, et al., | : | CIVIL ACTION NO. **4:CV-05-2337** |
| | : | Magistrate Judge Blewitt |
| Plaintiffs | : | |
| v. | : | |
| TOWNSEND ENGINEERING COMPANY, | : | |
| Defendant | : | |

**MEMORANDUM AND ORDER**

**I. Background**.

This products liability and personal injury action was commenced on October 7, 2005, by Plaintiffs Juan Perez and Minerva Perez ("Plaintiffs") against Defendant Townsend Engineering Company ("Defendant") in the Court of Common Pleas of Lackawanna County, Pennsylvania. (Doc. 1, Ex. A; Doc. 20-3). On November 10, 2005, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1441. (Doc. 1). The Defendant invoked the diversity jurisdiction of this Court. 28 U.S.C. § 1332(a). (Doc. 1 ¶ 7). The parties consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1), and the District Court entered an Order reassigning this case to a Magistrate Judge (Doc. 7) for pre-trial and trial purposes.

Defendant filed an Answer to the Plaintiffs' Complaint on January 9, 2006. (Doc. 9). After the close of discovery, on May 29, 2007, Defendant filed a Motion for Summary Judgment, a supporting Brief, a Statement of Material Facts ("SMF") and exhibits. (Doc. 20). On May 29, 2007, Defendant also filed a Motion to Preclude Testimony of Plaintiffs' Expert Witness (Ralph A. Lambert), a supporting Brief and exhibits. (Doc. 21). Plaintiffs filed Briefs, Responses to and exhibits in opposition to Defendant's Motion for Summary Judgment and its Motion to Preclude Testimony of Plaintiffs' Expert Witness. (Docs. 26, 27, 28, 29, 30). The Court also permitted the parties to file reply briefs and sur-reply briefs. (Docs. 33, 34,

38, 39).

In its Motion for Summary Judgment, Defendant argues as follows: that Plaintiffs failed to raise a genuine issue of material fact regarding the product's (essentially a ham skinning machine) design defect, warnings and causation; Plaintiffs failed to present qualified expert witness testimony; Plaintiffs failed to present evidence that the product is "unreasonably dangerous"; and Plaintiffs failed to present evidence that if Mr. Perez followed the multiple warnings accompanying Defendant's product, his injury still would have occurred. (Doc. 20).

In its Motion to Preclude the Testimony of Plaintiffs' Expert Witness, Defendant argues that certain opinions of Plaintiffs' expert must be precluded because they fail to meet the Federal Rule of Evidence 702 and *Daubert*[1] standards. (Doc. 21). We note that, by separate Memorandum and Order filed on March 5, 2008 (Doc. 43), we have denied Defendant's Motion to Preclude Testimony of Plaintiffs' Expert Witness. We will therefore rely on Plaintiffs' expert's report in determining the instant Motion for Summary Judgment.

## II. Motion for Summary Judgment Standard.

The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982),

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993).

The Court held oral argument on Defendant's Motion to Preclude the Testimony of Plaintiffs' Expert Witness on September 28, 2007.

*aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*.  The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id*., *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

### III.  Undisputed Material Facts.

On May 29, 2007, Defendant filed a Statement of Material Facts with exhibits. (Docs. 20-3, 20-4).  Plaintiffs filed their Response to Defendant's Statement of Material Facts on June 28, 2007.  (Doc. 30).

Plaintiff Juan Perez worked at the Citterio USA Corporation meat processing plant. On October 14, 2004, Mr. Perez was operating a Townsend 7600 Skinning Machine at work.  The skinning machine is used to skin round hams.  The machine consists of a toothed roll that pulls the ham towards a blade to skin or trim the ham.  Mr. Perez was trained to use Townsend-approved gloves on both hands while operating the skinning machine.  (Doc. 20-3 ¶ 25, Doc. 30 ¶ 25).  While operating the machine, Mr. Perez sustained an amputation injury to two fingers on his left hand.  (Doc. 20 ¶ 2, Doc. 29).

Plaintiffs have admitted the following paragraphs of Defendant's Statement of Material Facts which were filed under Local Rule 56.1, M.D. Pa.: Doc. 20-3, Doc. 30, ¶s 1-4, 6 (admitted in part), 7 (admitted in part), 8 (admitted in part), 11 (admitted in part), 13 (admitted in part), 14, 17, 18, 20 (admitted in part), 21 (admitted in part), 22 (admitted in part), 23, 24, 25 (admitted in part).

In the case of *Barthalow v. David H. Martin Excavating, Inc.*, 2007 WL 2207897, * 1, n. 5, (M.D.Pa.2007), this Court noted:

> The Middle District of Pennsylvania's Local Rule of Court 56.1 provides that a summary judgment motion must include a separate concise statement of material facts. M.D. Pa. Local R. 56.1. The rule also requires that an opposition to a summary judgment motion must similarly include a statement that "responds to the numbered paragraphs set forth in [the moving party's concise statement of material facts], as to which it is contended that there exists a genuine issue to be tried." *Id.* Moreover, "[a]ll material facts set forth in [the moving party's statement] will be deemed to be admitted unless controverted by the [opposing party's statement]. " *Id.* Only the first fourteen paragraphs set forth in Barthalow's opposing statement of facts (Doc. 27) correspond to those in DHM's (Doc. 22). Barthalow's paragraphs fifteen through twenty appear to set forth separate statements of fact and the Rule 56.1 statement as a whole does not provide clear responses to paragraphs fifteen through forty of DHM's statement. Accordingly, the court will deem the facts in paragraphs fifteen through forty of DHM's statement to be admitted.

*See also Dusenbery v. U.S.*, 2006 WL 218220, * 1 (M.D.Pa.2006) ("it appearing that defendants' statement of material facts was properly deemed admitted by plaintiff *see* L.R. 56.1 (providing that the moving party's statement of material facts will be deemed admitted unless the non-moving party specifically contradicts the statement").

Thus, we accept the facts contained in the stated paragraphs of Defendant's SMF since they are not disputed by Plaintiffs' responses thereto and are supported by the record, and we will adopt them as our own herein. *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (Under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[2]  We shall not repeat Defendant's undisputed Statement of Material Facts.

---

[2] *See also Paranich* District Court case at 286 F. Supp. 2d at 447, n. 3.

We shall now discuss Defendant's SMF which are disputed by Plaintiffs. We do not adopt these SMF as our own, but we will address, in our discussion below, which of Defendant's SMF we find to be disputed by Plaintiffs and create issues of material fact.

> 5. Ralph A. Lambert is a professional engineer who has worked for many food processing companies. *See* Deposition of Ralph A. Lambert, pp. 46-47. *See also* Doc. 20-5, Ex. B.
>
> 6. Mr. Lambert has never operated an open-top skinner.
>
> 7. Mr. Lambert has never designed an open-top skinner or any component of such product.
>
> 8. Mr. Lambert has never attended a "train the trainer" course with respect to the operation of an open-top skinner.
>
> 9. The "touch stop" or Grasselli "CLO" system was the only alternative design offered by Mr. Lambert. With the "touch stop" system, the operator is to wear electronic gloves that stop the tooth roll if a glove touches the machine. The Grasselli system does not always work perfectly.
>
> 10. Regarding the warning labels on the product, Mr. Lambert opined that Defendant "could have been more effective in their signage" and could have added more warnings. *See* Deposition of Ralph A. Lambert, pp. 174.
>
> 11. In his report, Mr. Lambert states:
>
>> "While there can be debate about skinning machines being offered and sold without built-in integrated safeguards that are factory fitted, a review of literature for skinners offered by other manufacturers shows that this appears to be the practice used by other companies as well as Townsend and Grasselli." *See* Mr. Lambert's Preliminary Engineer's Report, Doc. 20-5, Exhibit C, p. 7.
>
> 12. Mr. Lambert states that there is debate about whether or not the built-in safeguard or additional safety devices should be provided as an option or as standard equipment. *See* Deposition of Mr. Lambert, Doc. 20-7, Ex. D, pp. 200-05.
>
> 13. The "touch stop" or Grasselli "CLO" system was the only alternative design offered by Mr. Lambert and the system is not always perfect.

15. Mr. Lambert stated that his definition of "defect" or "defective" is "what it did not have that it should have had." *See* Deposition of Mr. Lambert, Doc. 20-7, Ex. D, p. 138.

16. Mr. Lambert has looked at commercially available warnings, instructions, labels and graphic pictorials and has opined what would be effective. *See* Deposition of Mr. Lambert, Doc. 20-7, Ex. D, pp. 176-77.

19. The Townsend 7600 Skinner Manual contains a section titled "Safety Precautions." The Manual also contains a "Safe Operation" Chart. *See* Townsend Model 7600 Skinner Operator's Manual, Doc. 20-11, Ex. H, pp. 1-5.

20. The Townsend 7600 Manual states:

> "If your company policy requires or permits wearing gloves while using this skinner, use only gloves that are approved for use with this machine. Because no glove can guarantee protection from getting cut, or being caught by moving machinery, this recommendation is made to minimize the hazard. The least hazardous glove known to Townsend is available by ordering Townsend part number 17235."
> *See* Townsend Model 7600 Skinner Operator's Manual, Doc. 20-11, Ex. H, pp. 1; Doc. 29, Ex. F.

21. The Townsend 7600 skinner has warnings and instructions on the product, including the statement "READ AND UNDERSTAND THE SAFETY INSTRUCTIONS IN THE MANUAL BEFORE USING THE MACHINE."

22. The Townsend 7600 skinner has graphic pictorials on the product itself.

25. Mr. Perez was trained to operate the Townsend skinner using the Townsend-recommended gloves. Mr. Perez, and many of his co-workers, used the Townsend glove only on one hand because the gloves are bulky and they make it difficult to hold onto the hams.

26. Many of Mr. Perez' co-workers only wear the Townsend-recommended glove on one hand because the rubber gloves are bulky and they make it difficult to hold onto the hams. Many of the employees wear a cutting glove on the left hand and a rubber glove on the left hand.

(Doc. 20-3, Doc. 30).

**IV. DISCUSSION.**

As stated, Defendant argues that Plaintiffs failed to establish a genuine issue of material fact for trial. Defendant set forth four arguments in its Motion for Summary Judgment. Defendant argues that Plaintiffs failed to raise a genuine issue of material fact

regarding the product's design defect, warnings and causation; Plaintiffs failed to present qualified expert witness testimony; Plaintiffs failed to present evidence that the product is "unreasonably dangerous"; and Plaintiffs failed to present evidence that if Mr. Perez followed the multiple warnings accompanying Defendant's product, the injury still would have occurred. (Doc. 20).

### A. Whether there are genuine issues of material fact regarding the product's design defect, warnings and causation.

Pennsylvania follows the *Restatement (Second) of Torts*, § 402A (1965), and imposes strict liability on manufacturers of products sold in a defective condition unreasonably dangerous to the user or consumer.[3] *See Dillinger v. Caterpillar, Inc.*, 959 F.2d 430, 435 (3d Cir. 1992). In Pennsylvania, there are three types of defective conditions that can give rise to strict liability: (1) design defect, (2) manufacturing defect and (3) failure to warn defect. *See Phillips v. A-Best Products Co.*, 665 A.2d 1167, 1170 (Pa. Super. 1995). The test for defectiveness is whether the "product left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for the intended use." *Habecker v. Clark Equipment Co.*, 36 F.3d 278, (3d Cir. 1994) (quoting *Azzarello v. Black Brothers Co.*, 391 A.2d 1020 (1978)). The Pennsylvania Supreme Court later held that plaintiffs must establish that the allegedly defective product is

---

[3] *Restatement (Second) of Torts*, § 402A states as follows:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

"unreasonably dangerous." *See Azzarello*, 391 A.2d 1020.

Defendant argues that Plaintiffs failed to establish an issue of material fact regarding product defect or causation because their expert has opined that his alternative design of a skinning machine is "subject to debate." Defendant's state that its choice not to use the alternative design for a skinning machine was therefore reasonable. (Doc. 20-2 at 2).

As stated, Mr. Lambert opined in his report that the Townsend Skinner is "defective." (Doc. 20-3 ¶ 14, Doc. 30 ¶ 14). In his report, Mr. Lambert states:

> "While there can be debate about skinning machines being offered and sold without built-in integrated safeguards that are factory fitted, a review of literature for skinners offered by other manufacturers shows that this appears to be the practice used by other companies as well as Townsend and Grasselli."

*See* Mr. Lambert's Preliminary Engineer's Report, Doc. 20-5, Ex. C, p. 7; Doc. 29, Ex. B.

Mr. Lambert offered an alternative design, namely the "touch stop" concept. The "touch stop" system "is designed to stop and reverse the tooth roll when a special glove or gloves worn by the operator, touches the machine." (Doc. 20-3 ¶ 13, Doc. 30 ¶ 13).

Defendant states that Mr. Lambert opined that the decision as to whether to make the "touch stop" system mandatory or optional is "subject to debate." (Doc. 20-2 at 5). Thus, Defendant argues that Mr. Lambert opined implicitly, if not explicitly, that Defendant's choice to not offer the "touch stop" device is reasonable. (Doc. 20-2 at 5). As reasonable engineers may debate this issue, Defendant argues that to ask a lay-person jury to decide this issue would require unfair speculation or conjecture. (Doc. 20-2 at 5-6). Defendant further argues that the Grasselli "touch stop" system does not always work. (Doc. 20-2 at 5-6). Plaintiffs argue that Mr. Lambert clearly opined that Defendant's product was defectively designed because it lacked the "touch stop" system and that the "touch stop" device was a necessary safeguard. (Doc. 29 at 21).

The Defendant recognized that the blade and tooth roll of its skinning machine are dangerous and there was a cover to guard the hazard. (*Deposition of Stephen H. Cate*, Doc. 29, Ex. D, pp. 19-20). Townsend's patent recognized the hazard and noted a means to address the hazard. (Doc. 29, Ex. H). The patent states:

> Meat skinning machines adapted to remove skin or membrane from meat, poultry or fish products have long been in existence. These machines include an elongated sharp skinning blade which is positioned adjacent to a gripping roll having a plurality of teeth thereon for pulling the meat product towards the cutting edge of the blade.
>
> Occasionally, the operators of these machines will inadvertently allow their hands or fingers to come in contact with the gripping roll whereby their hands or fingers will be drawn into contact with the skinning blade.
>
> While safety switches and the like have been developed to permit the operator to stop the machine, and hence stop the rotation of the gripping roll, these devices do not always function automatically, and they do not function quick enough to prevent injury to the operator.
>
> Therefore, it is a principal object of this invention to provide a safety method and means for stopping meat skinning machines which will automatically and substantially instantaneously stop the machine when the operator's hands or fingers are in contact with the danger zone that surrounds the gripping roll and the adjacent cutting edge of the skinning blade.
>
> A further object of this invention is to provide a safety method and means for stopping meat skinning machines which employs the use of an operator's glove made of a material capable of conducting electrical current and which is of low tensile strength to permit portions thereof to be torn away from the glove body when those portions become entangled in the teeth of the gripping roll.
>
> A further object of this invention is to provide a safety method and means for stopping meat skinning machines which employs the use of an operator's glove made of a material capable of conducting electrical current which will make electrical contact with terminals on a danger area on the machines whereby electrical power will immediately be withdrawn from the machine if the glove comes into contact with said safety area.
>
> A further object of this invention is to provide a safety method and means for stopping meat skinning machines which employs the use of an operator's glove made of a material capable of conducting electrical current which will serve to induce the machine operator to wear such gloves on both hands by providing pairs of spaced power switch terminals on the machine that can be closed only by simultaneous but separate contact between the terminals of each pair of terminals with respective electroconducting gloves.

(Doc. 29, Ex. H).

Thus, Defendant acknowledges in its patent that the skinning machine is dangerous. Defendant's patent offers safety methods to avoid accidents and injuries. Plaintiffs state that Defendant chose to "come up with something" rather than work to design the hazard out of its skinning machine. (Doc. 29 at 22). Plaintiffs aver that Defendant should have created another, safer design, such as the Grasselli system. Plaintiffs note that the Grasselli system is

on the market and is recognized as reliable by the British Health and Safety Executive[4] (HSE).

In light of the Grasselli "touch stop" system, and based on Lambert's Report, Plaintiffs have set forth evidence that Defendant's product could have had a different safety design. Plaintiffs have set forth evidence from which a reasonable trier of fact could find that Defendant's product was defectively designed. Thus, we find a material fact in dispute with respect to the issue of whether Defendant's skinning machine was defectively designed.

### B. Whether there is a genuine issue of material fact that Plaintiffs' expert is qualified to present expert witness testimony.

Concurrent with its Motion for Summary Judgment, Defendant filed a Motion to Preclude the Testimony of Plaintiffs' Expert Witness (Lambert). (Doc. 21). Defendant argues that, to the extent that Mr. Lambert's opinions relate to the issues of design defect, warnings or causation, they are not admissible and Plaintiffs' therefore lack the necessary proof to sustain their case. (Doc. 20-2 at 6-7). Defendant states that asking a lay-person jury to guess about the possible defectiveness of a machine would require speculation, conjecture and surmise. (Doc. 20-2 at 6-7).

Plaintiffs argue that Mr. Lambert's testimony is proper in this products liability case and that he is qualified to opine as to the cause of Mr. Perez' accident. Plaintiffs note that Mr. Lambert has extensive engineering experience, is familiar with general engineering principles, understands the food processing industry and has extensively analyzed the product at issue. (Doc. 29 at 26).

Mr. Lambert reviewed several materials and documents which provide a sufficient reliable source of information to support his conclusions regarding the cause of Plaintiff's injury. (*See* Doc. 30, Exs. A, B, C). Mr. Lambert has adequately explained his opinions in his report as well as the bases for those opinions. *Id.* The Defendant objects to the

---

[4] The British Health and Safety Executive ("HSE") is the British equivalent of the U.S. Occupational Safety & Health Administration ("OSHA"). *See Health and Safety Executive* at http://www.hse.gov.uk/

admission of Mr. Lambert's report and testimony based on its claim that this proffered expert is not qualified. Because we have denied Defendant's Motion to Preclude the Testimony of Expert Witness Mr. Lambert, we will deny Defendant's instant Motion for Summary Judgment on this ground. (*See* Doc. 43).

### C. Whether there is a genuine issue of material fact as to whether the product is "unreasonably dangerous."

As stated, the Plaintiffs must establish at the outset that the allegedly defective product is "unreasonably dangerous." *See Azzarello*, 391 A.2d 1020. The "unreasonably dangerous" decision is a question of law and must be determined by the court. *Id.* In making this determination, the judge must "engage in a risk-utility analysis, weighing a product's harms against its social utility."[5] *Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1044 (3d Cir. 1997). *See also Moyer v. United Dominion Industries, Inc.*, 473 F.3d 532 (3d Cir. 2007).

Defendant states that Mr. Lambert opined that his reasonable alternative design for a skinning machine, the "touch-stop" system, is "subject to debate." (Doc. 20-2 at 7).

---

[5] Factors relevant to this analysis include:

(1) The usefulness and desirability of the product-its utility to the user and to the public as a whole;
(2) The safety aspects of the product-the likelihood that it will cause injury, and the probable seriousness of the injury;
(3) The availability of a substitute product which would meet the same need and not be as unsafe;
(4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility;
(5) The user's ability to avoid danger by the exercise of care in the use of the product;
(6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instruction; and
(7) The feasibility, on the part of the manufacturer, of spreading the loss of [sic] setting the price of the product or carrying liability insurance.

*Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1046 (3d Cir. 1997) (quoting *Dambacher v. Mallis*, 485 A.2d 408, 423 n. 5) (Pa. Super. 1985)). *See also Moyer v. United Dominion Industries, Inc.*, 473 F.3d 532 (3d Cir. 2007).

Defendant argues that its design choice to not offer this "touch-stop" device was therefore reasonable.  Thus, Defendant argues that there is insufficient evidence for the court to find that the Townsend 7600 Skinning Machine is "defective and unreasonably dangerous." (Doc. 20-2 at 7).

Plaintiffs state that Defendant failed to make its product as safe as possible and sold a "defective" and "unreasonably dangerous" skinning machine.  (Doc. 29 at 30).  Defendant acknowledged that the blade and tooth roll of its skinning machine are dangerous and there was a cover to guard that hazardous area.  (*Deposition of Stephen H. Cate*, Doc. 29, Ex. D, pp. 19-20).  Plaintiffs aver that Defendant should have created another, safer design.  Plaintiffs propose the Grasselli system as the safer machine.  Plaintiffs state that Defendant sold the skinning machine without a needed safeguard that was on the market in 1997, the year Defendant sold the skinning machine.  (Doc. 29 at 30).  Plaintiffs argue that their expert, Mr. Lambert, has proposed an alternative "touch stop" system that would essentially eliminate the product's unsafeness.  Plaintiffs also aver that Mr. Lambert never concluded that Defendant's failure to have a "touch stop" system was reasonable.  (Doc. 29 at 25).

As stated, Mr. Lambert opined in his report that the Townsend skinner is "defective." (Doc. 20-3 ¶ 14, Doc. 30 ¶ 14).  In his report, Mr. Lambert states:

> "While there can be debate about skinning machines being offered and sold without built-in integrated safeguards that are factory fitted, a review of literature for skinners offered by other manufacturers shows that this appears to be the practice used by other companies as well as Townsend and Grasselli."

(Doc. 20-5, Ex. B).

Mr. Lambert's alternative design, the "touch stop" system, "is designed to stop and reverse the tooth roll when a special glove or gloves worn by the operator, touches the machine."  (Doc. 20-3 ¶ 13, Doc. 30 ¶ 13).  Defendant argues that the "touch stop" concept does not always work this way in practice.  (Doc. 20-3 ¶ 13, Doc. 30 ¶ 13).  Plaintiffs state that the fact that the "touch stop," or Grasselli system, is not always perfect is of little significance.  (Doc. 20-3 ¶ 13, Doc. 30 ¶ 13).  Plaintiffs argue that Defendant's machine's lack of a device to "stop and reverse" caused Mr. Perez' injury.  (Doc. 29 at 30).  Plaintiffs

state that the British HSE determined that the Grasselli "touch stop" system is the only open-top skinning machine that provided proper operator protection.  Further, Plaintiffs state that even if the Grasselli "touch stop" system failed, the effects would be no worse than the Townsend 7600 machine.  (Doc. 20-3 ¶ 13, Doc. 30 ¶ 13).

Plaintiffs have sufficiently shown through their evidence that the Grasselli "touch stop" system was an alternative system available on the market that had more safety mechanisms than Defendant's machine.  Thus, Plaintiffs have set forth evidence from which a reasonable trier of fact could find that the Defendant's product was unreasonably dangerous.

> ### D. Whether there is a genuine issue of material fact that Plaintiffs failed to present evidence that if Mr. Perez followed the multiple warnings accompanying Defendant's product, his injury still would have occurred.

Under Pennsylvania law, a plaintiff alleging a product design or manufacturing defect based on a theory of strict liability must show that (1) the product was defective; (2) the defect was the proximate cause of the plaintiff's injuries; and (3) the defect causing the injury existed when the product left the seller's hands.  *See Pavlik v. Lane Limited/Tobacco Exporters Int'l*, 135 F.3d 876, 881 (3d Cir. 1998).  A product may be deemed defective where it lacks adequate warnings or instruction necessary for the safe use of the product. *See Gigus v. Giles & Ransome, Inc.*, 868 A.2d 459 (Pa. Super. 1995).  A "product which contains inherent dangers, is defective when sold, if not accompanied by a sufficient warning to the consumer of possible risks and limitations of the product." *Greiner v. Volkswagenwerk Aktiengeselleschaft*, 540 F.2d 85, 91 (3d Cir. 1976).

Defendant argues that Plaintiff Juan Perez failed to heed many warnings related to the hazard involved with its skinning machine.  (Doc. 20-2 at 10).  Defendant states that Mr. Perez admits that he was trained in the proper use of the skinner and he was trained to wear the Townsend-approved gloves.  (Doc. 20-2 at 10; Doc. 20-3 ¶ 25; Doc. 30 ¶ 25). Defendant asserts that if Mr. Perez had heeded the warnings and instructions accompanying its machine, the accident at issue would not have occurred.  (Doc. 20-2 at 12).  Defendant relies on *Gigus*, 868 A.2d 459, 462-63, stating that "[w]here warning is given, the seller may

reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." (Doc. 20-2 at 8). Plaintiffs state that Defendant's reliance on *Gigus* is misplaced. (Doc. 29 at 32). In the instant matter, Plaintiffs argue that Defendant failed to provide a needed safety device that would have prevented the injury. (Doc. 29 at 32).

Plaintiffs state that, despite the warnings, the Defendant's machine lacked proper safety devices and, thus, was defectively designed. (Doc. 29 at 31). Plaintiffs argue that the machine lacked a needed safety device, the "touch stop" system. (Doc. 29 at 31). Plaintiffs further state that Mr. Perez never saw the operator's manual for the Townsend 7600 skinner. Plaintiffs argue that Mr. Perez could not read the English instructions in the manual nor the English label on the machine because he spoke and read only Spanish. (Doc. 29 at 32).

Plaintiffs state that Defendant has failed to establish how any warnings could have prevented the injury. Further, the Townsend 7600 Operator's Manual states that the glove does not guarantee safety, it only minimizes hazards. (Doc. 29 at 33). The Townsend 7600 Manual states:

> "If your company policy requires or permits wearing gloves while using this skinner, use only gloves that are approved for use with this machine.
>
> Because no glove can guarantee protection from getting cut, or being caught by moving machinery, this recommendation is made to minimize the hazard. The least hazardous glove known to Townsend is available by ordering Townsend part number 17235.
>
> This glove has characteristics that afford some improved protection to an operator.
> The glove has improved resistance to the skinning pinch point of this skinner. Also, if the glove were to get caught, the glove will more easily break apart and not be pulled into the moving machinery."

*See* Townsend Model 7600 Skinner Operator's Manual, Doc. 20-11, Ex. H, pp. 1; Doc. 29, Ex. F.

The Townsend 7600 Skinner's Operator's Manual states that "no glove can guarantee protection from getting cut, or being caught by moving machinery" and the glove provides "*some* improved protection" to the operator. *See* Townsend Model 7600 Skinner

Operator's Manual, Doc. 20-11, Ex. H, pp. 1; Doc. 29, Ex. F (emphasis added).  Thus, the Manual provides that Mr. Perez' injury may still have occurred even if he was wearing the Townsend-recommended gloves at the relevant time.

Plaintiffs provide a letter from Ted Townsend, President of Townsend Engineering Company, dated December 21, 1993, regarding the use of gloves with Townsend open-top skinning machines.  (Doc. 29, Ex. F).  In the letter, Mr. Townsend recommends the use of a particular glove while operating a Townsend open-top skinner.  However, Mr. Townsend states, "[w]hile this is the least hazardous glove known to Townsend, no glove known to us can ever make every open-top skinning machine completely and perfectly safe."  (Doc. 29, Ex. F).

Based on the foregoing, Plaintiffs have set forth evidence from which a reasonable trier of fact could find that Mr. Perez' injury may have occurred even if he was wearing the Townsend-recommended gloves.

Accordingly, the Court will deny Defendant's Motion for Summary Judgment (Doc. 20) in its entirety.

An appropriate Order follows.

s/ Thomas M. Blewitt_____
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: March 5, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUAN PEREZ, et al., | : | CIVIL ACTION NO. **4:CV-05-2337** |
| Plaintiffs | : | Magistrate Judge Blewitt |
| v. | : | |
| TOWNSEND ENGINEERING COMPANY, | : | |
| Defendant | : | |

**ORDER**

**AND NOW, this 5th day of March, 2008,** upon consideration of the Defendant's Motion for Summary Judgment **(Doc. 20)**, and after hearing oral argument on September 28, 2007, **IT IS HEREBY ORDERED THAT** Defendant's Motion for Summary Judgment is **DENIED**.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: March 5, 2008**